# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ERIN ROBERTSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STOCKTON MORTGAGE CORPORATION d/b/a QUILLO,<br><br>Defendant. | Case No.: 1:26-cv-00658-JKM |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant, Stockton Mortgage Corporation d/b/a Quillo ("Stockton") submits this reply memorandum of law in further support of its Motion to Dismiss the request of Plaintiff, Erin Robertson, for an injunction due to lack of standing.

Plaintiff's opposition does not save her request for injunctive relief. Plaintiff "bears the burden of establishing that [s]he has Article III standing for each type of relief sought." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012). To seek injunctive relief, Plaintiff is required to establish that she faces a "real or immediate threat that [she] will be wronged again." *Id.* Plaintiff has not done so. Accepting the Amended Complaint's factual allegations as true, the alleged calls all occurred during a one-week period in May 2024, and Plaintiff alleges no call, text,

8677024v.1

voicemail, or attempted contact from Stockton since May 16, 2024. The Court should dismiss her request for injunctive relief with prejudice.

## I. Plaintiff is Required to Establish Article III Standing to Seek An Injunction.

Plaintiff's opposition[1] begins from the premise that she "need not plead the traditional elements of injunctive relief to pursue the statutory injunction the TCPA expressly authorizes." (Opp. Br. at 6.) But nothing in the TCPA eliminates or alters the well-established rule that Plaintiff "bears the burden of establishing that [s]he has Article III standing for each type of relief sought." *ZF Meritor*, 696 F.3d at 301.

Moreover, the cases Plaintiff cites in her opposition do not support her standing argument. One case Plaintiff cites – *Gutierrez v. Florida Advertising and Marketing Corp.*, 387 F.Supp.3d 1410 (S.D. Fla. 2019) – does not contain any analysis of standing, let alone a holding that a TCPA plaintiff does not need to allege a real and continuing risk of future harm to maintain a claim for injunctive relief.

Plaintiff also cites *Abramson v. AP Gas & Electric (PA), LLC*, No. 22-1299, 2023 WL 1782728 (W.D. Pa. Feb. 6, 2023), but that reliance is misplaced. Contrary to what Plaintiff claims, *Abramson* did not hold that a TCPA plaintiff may seek

---

[1] Plaintiff repeatedly states that Stockton "concedes" facts alleged in the Amended Complaint. (Opp. Br. at 2.) Stockton does not concede the truth of those allegations. It acknowledges only that, for purposes of a facial Rule 12(b)(1) challenge, the Court accepts well-pleaded factual allegations as true.

injunctive relief without satisfying Article III's future-injury requirement. Rather, the court concluded that the allegations before it permitted an inference of future violations. At most, *Abramson* is a fact-specific, nonbinding decision finding future-risk allegations sufficient on materially different facts.

*Abramson* is also factually distinguishable. There, the court found that the pleaded facts were sufficient to infer future TCPA violations. Here, by contrast, Plaintiff alleges a one-week period of calls in May 2024 and no call, text, voicemail, or attempted contact since that time. Plaintiff's generic allegations that Stockton continues to use telemarketing and has not provided "cessation evidence" do not plausibly show that Plaintiff herself faces a real and immediate threat of future calls.

The decision in *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 23-5114, 2024 WL 4228149, at *6 (E.D. Pa. Sept. 17, 2024), confirms that Plaintiff's statutory-injunction argument is incorrect. In *Weingrad*, as here, a TCPA plaintiff relied on *Abramson* to argue that a statutory violation alone was enough to establish standing to seek injunctive relief. The court rejected that argument and dismissed the request for injunctive relief because the plaintiff had not pleaded facts showing a threat of future harm. *Id.* at *6. Thus, *Abramson* does not stand for the rule Plaintiff advances. At most, *Abramson* found that the allegations of the risk of future injury were sufficient based on the facts of that case. It does not relieve Plaintiff of her burden to plead a real and immediate threat that Stockton will call her again.

8677024v.1

Likewise, in *Newell v. Children's Dental Health Associates, LLC*, No. 25-5238, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026), the court rejected the same argument Plaintiff offers here. The court dismissed the plaintiff's request for injunctive relief under the TCPA because he "did not plead any factual basis to conclude that he is at risk of any real or immediate threat that he will be wronged again by another text message." *Id.* at *3.

As these cases demonstrate, there is no TCPA exception for Article III standing as Plaintiff contends. To pursue injunctive relief, she must allege facts sufficient to show that she faces future injury that is concrete, imminent, and likely to recur. This constitutional requirement applies to the TCPA just as it does any other claim in federal court. As explained below, the Amended Complaint lacks sufficient allegations to satisfy standing.

## II. Plaintiff Lacks Article III Standing to Seek an Injunction.

Despite first contending that she need not plead facts showing standing to pursue a statutory injunction under the TCPA, Plaintiff then contends the Amended Complaint sufficiently does so. The Court should reach the opposite conclusion.

Plaintiff argues that the "Amended Complaint alleges far more than an isolated, completed episode," (Opp. Br. at 8), but that is inaccurate. Although the Amended Complaint alleges more than one call, all the calls at issue occurred during a one week span approximately two years ago. She alleges no communications since

that time. These allegations fall far short of alleging a future injury that is concrete, imminent, and likely to recur.

The allegations also show why the risk of future contact is speculative. Plaintiff alleges that the initial text was addressed to "Igbinosa," that Plaintiff is not Igbinosa and has no affiliation with anyone by that name, and that the text stated Stockton had "received info" that Igbinosa was looking into a home loan. (Am. Compl. ¶¶ 22–23.) In other words, the pleaded facts describe a discrete alleged mistaken-lead episode in May 2024. Plaintiff alleges no facts showing that the same lead remains active, that her number remains in any current campaign, or that Stockton has attempted to contact her again after May 16, 2024.

The remainder of Plaintiff's injunctive claim relies on conclusory statements, including (1) there is "a sufficient likelihood that Defendant or persons acting on its behalf will call Plaintiff in the future absent injunctive relief" (Am Compl. ¶ 31), (2) the "calls to Plaintiff were not isolated communications" (*Id.* ¶ 32), (3) "Defendant's policies and procedures for avoiding sending illegal telephone calls are either non-existent or inadequate" (*Id.* ¶ 33), and (4) "Defendant continues to use outbound telemarketing" (*Id.* ¶ 37). But these bald contentions cannot overcome the most important fact specifically alleged in the Amended Complaint – that Stockton has not made an alleged telemarketing call to Plaintiff's telephone number since May 16, 2024. (*Id.* ¶ 25.) And none of Plaintiff's allegations identifies any current calling

8677024v.1

list containing Plaintiff's number, any active campaign directed to Plaintiff, any post-May 2024 attempted contact, or any other fact showing a real and immediate threat of future calls to Plaintiff herself.

The timing of the lawsuits in the cases Plaintiff cites also shows why they are distinguishable. In *Abramson*, the complaint was filed approximately one month after the calls at issue. In *Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168 (D.N.J. Jan. 11, 2023), the complaint was filed approximately eight months after the allegedly offending calls. Here, Plaintiff alleges no communications from Stockton since May 16, 2024 – nearly two years before the original Complaint was filed. Neither *Abramson* nor *Atkinson* therefore supports standing here.

Plaintiff also cannot establish future injury by pointing to what Stockton has not done. Plaintiff argues that Stockton has not offered evidence that it removed or suppressed her telephone number, changed its practices, or promised not to call her again. But that argument reverses the burden. On a facial standing challenge, Plaintiff must plead facts showing a real and immediate threat that she will be called again. *See Pennsylvania v. Trump*, 795 F.Supp.3d 607, 626 (E.D. Pa. 2025) ("[I]n establishing standing, the plaintiff always bears the burden of proof."). Stockton is not required to disprove future injury by submitting evidence of some promise not to call her in the future. If the absence of such evidence were enough, every TCPA plaintiff could plead injunctive standing simply by alleging that the defendant has

6

not promised never to call again.

For all these reasons, Plaintiff has failed to establish Article III standing to seek injunctive relief under the TCPA. The allegations in the Amended Complaint simply do not support an inference that future calls to Plaintiff are likely to occur.

## III.    *Snyder* and the Temporary Injury Exception to Mootness Do Not Apply.

In her opposition, Plaintiff relies on *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017), for the proposition that "when the time frame for the alleged injury is by nature temporary, a named plaintiff can continue to pursue the interests of the class even after his own claim has been rendered moot." (Opp. Br. at 9–10.) That principle does not apply here. Stockton is not arguing that Plaintiff once had standing to seek injunctive relief but later lost it because Stockton voluntarily stopped calling her during litigation. Rather, Stockton's argument is that Plaintiff never pleaded facts establishing standing to seek injunctive relief in the first place.

*Snyder* itself recognized that the temporary-injury exception applies only if the named plaintiff had standing when the case was filed. *Snyder*, 258 F. Supp. 3d at 901. Here, Plaintiff had no such standing. As explained above, the Amended Complaint alleges a completed series of calls in May 2024 and no subsequent call, text, voicemail, or attempted contact. Because Plaintiff has not pleaded a real and immediate threat of future injury, Snyder's mootness-based exception does not save

her request for injunctive relief.

## IV. Plaintiff Should Not Be Given Leave to Amend.

Finally, Plaintiff argues that dismissal of her request for injunctive relief with prejudice is inappropriate on a Rule 12(b)(1) motion, citing *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879 (3d Cir. 2020). Stated another way, Plaintiff seeks leave to amend the Amended Complaint again. The Court should deny this request because Plaintiff has already amended once, and her opposition does not identify any additional facts that could establish a real and immediate threat of future contact by Stockton. To the extent the Court concludes that a jurisdictional dismissal must be entered without prejudice, Stockton respectfully requests that the dismissal be without leave to amend in this action.

## V. Conclusion

For the reasons set forth above and in its opening brief, Stockton respectfully requests that the request for injunctive relief in the Amended Complaint be dismissed for lack of standing.

Respectfully submitted:

/s/ Christopher A. Reese
Andrew K. Stutzman
Eric M. Hurwitz
Christopher A. Reese
STRADLEY RONON STEVENS &
YOUNG, LLP

8677024v.1

2005 Market Street
Suite 2600
Philadelphia, PA  19103
(215) 564-8000 (telephone)
(215) 564-8120 (facsimile)
creese@stradley.com

*Attorneys for Defendant*
*Stockton Mortgage Corporation*

Dated: June 26, 2026

9

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed. Supp. (2024)

2024 WL 4228149

2024 WL 4228149
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Leon WEINGRAD
v.
TOP HEALTHCARE OPTIONS
INSURANCE AGENCY CO.

CIVIL ACTION NO. 23-5114
|
Filed September 17, 2024

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Anthony I. Paronich, Paronich Law, P.C., Hingham, MA, for Leon Weingrad.

Matthew E. Selmasska, Richard J. Perr, Monica M. Littman, Kaufman Dolowich Voluck LLP, Philadelphia, PA, Jeffrey B. Pertnoy, Akerman LLP, Miami, FL, for Top Healthcare Options Insurance Agency Inc.

**MEMORANDUM**

KEARNEY, District Judge

 **\*1** Our elected national and Pennsylvania representatives recognize the potential abuse from telemarketers calling persons to sell identified products. Congress allows offended call recipients who placed their phone numbers on the National Do Not Call Registry to sue telemarketers for more than one call seeking to sell a specific product or service.

The Pennsylvania General Assembly requires telemarketers calling Pennsylvania phone numbers to register or face review by the Pennsylvania Attorney General. We today address a claim by a Pennsylvanian who placed his number on the Do Not Call Registry and then answered one call from an alleged Florida telemarketer on December 15, 2023. The Pennsylvanian claims the Florida telemarketer violated federal and state law. But the Pennsylvanian alleges he answered one call last December from the telemarketer seeking to sell "health insurance" with no further facts. We dismiss the federal claim with leave to amend as one answered call does not make a federal case and the call recipient needs to plead more facts about the call contents and to show willful conduct. We dismiss the Pennsylvania claim with prejudice as the General Assembly allows only the Attorney General to prosecute a claim for engaging in telemarketing calls in Pennsylvania without being registered here.

**I. Alleged Facts**

Leon Weingrad placed his residential telephone number on the National Do Not Call Registry sometime before December 2022. [1] A Florida health insurance marketer Top Healthcare Options Insurance Agency Co. still called him nine times on December 13, 2023 and December 15, 2023 from different phone numbers: [2]

[1]  ECF 12 ¶ 20.

[2]  *Id.* ¶ 30. Top Healthcare Options is a Florida health insurance marketing corporation. *Id.* ¶¶ 6, 29. Top Healthcare Options is not registered as a telemarketer with the Attorney General of Pennsylvania. *Id.* ¶ 18.

| *Date* | *Caller ID* |
| --- | --- |
| 12/13/2023 | (267)282-3676 |
| 12/13/2023 | (267)413-8938 |
| 12/13/2023 | (267)313-6263 |
| 12/15/2023 | (267)429-8460 |
| 12/15/2023 | (267)465-5225 |
| 12/15/2023 | (267)465-5220 |
| 12/15/2023 | (267)313-6305 |
| 12/15/2023 | (267)200-9620 |

12/15/2023          (267)465-5198

Mr. Weingrad answered one call from Top Healthcare Options, caller ID (267)465-5198, on December 15, 2023.[3] The caller claimed to work for "National Health Enrolment Centre" and "the purpose of the call was to sell [Mr. Weingrad] health insurance."[4] Mr. Weingrad considered the call unwanted.[5]

[3]    *Id.* ¶ 32.

[4]    *Id.*

[5]    *Id.* ¶ 33.

**II. Analysis**
And he then decided to sue. He alleges Top Healthcare Options violated the Telephone Consumer Protection Act by making calls to his phone number on the national Do Not Call Registry.[6] Mr. Weingrad sues on behalf of a nationwide class of persons who had registered their telephone numbers on the Do Not Call Registry for at least thirty-one days, but who received more than one telemarketing call from or on behalf of Top Healthcare Options, within a twelve-month period in the previous four years.[7]

[6]    *Id.* ¶¶ 56–60.

[7]    *Id.* ¶ 41.

Mr. Weingrad also alleges Top Healthcare Options violated the Pennsylvania Telemarketer Registration Act by making telemarketing calls without registering with the Office of Attorney General at least thirty days prior to making the calls.[8] Mr. Weingrad sues on behalf of all Pennsylvanians who received a telephone call from or on behalf of Top Healthcare Options acting as a "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office of Attorney General. Mr. Weingrad limits this class by a two-year cutoff.[9]

[8]    *Id.* ¶¶ 61–64.

[9]    *Id.* ¶ 41.

**\*2** Top Healthcare Options now moves to dismiss.[10] Top Healthcare Options argues (1) the Telephone Consumer Protection Act claim is deficient because Mr. Weingrad admits he is speculating about the content of all of the

calls except for one, (2) there is no private cause of action under the Pennsylvania Telemarketer Registration Act, (3) the Pennsylvania Telemarketer Registration Act claim is deficient because Mr. Weingrad does not allege he "purchased or leased goods" as required by the Act and he has no allegations of harm, (4) Mr. Weingrad lacks standing to seek injunctive relief, and (5) Mr. Weingrad does not plead facts showing a "willful" or "knowing" violation of the Telephone Consumer Protection Act.[11]

[10]    A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,' " it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).
In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions,

and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we " 'tak[e] note of the elements a plaintiff must plead to state a claim' "; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]' "; and, (3) " '[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' ..., we determine whether they 'plausibly give rise to an entitlement to relief.' " *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

11    ECF 24-1.

We dismiss Mr. Weingrad's Telephone Consumer Protection Act claim without prejudice because he does not plead he received multiple telephone solicitations and does not plead the contents of the calls he received. We dismiss Mr. Weingrad's claim for treble damages without prejudice as he does not plead a knowing or willful violation of the law. We dismiss Mr. Weingrad's Pennsylvania Telemarketer Registration Act claim with prejudice because there is no private right of action under the Act. And we dismiss Mr. Weingrad's claim for injunctive relief without prejudice as Mr. Weingrad does not plead threat of future harm.

### A. Mr. Weingrad does not state a claim under the Telephone Consumer Protection Act.

**\*3** We dismiss the Telephone Consumer Protection Act claim without prejudice. Mr. Weingrad did not plead multiple telephone solicitations and did not adequately allege the content of the calls.

### 1. Mr. Weingrad does not allege he received "more than one" telephone call.

Top Healthcare Options argues Mr. Weingrad does not allege he received more than one telephone solicitation from Top Healthcare Options in a twelve-month period, as he makes no allegations about the other eight phone calls he received.[12] Mr. Weingrad pleads he received nine calls from Top Healthcare Options's phone numbers and we must infer those calls were telephone solicitations at this stage.[13]

12    *Id.* at 4–8.

13    ECF 30 at 4–11.

Congress enacted the Telephone Consumer Protection Act of 1991 in response to consumer complaints about telemarketing calls.[14] Congress through the Act prohibits and restricts violating a consumer's request to not receive calls.[15] Consumers who do not want to receive unsolicited telemarketing calls can register their numbers on the national Do Not Call Registry.[16] Companies engaged in telemarketing must have procedures in place to avoid calling numbers on the Do Not Call Registry.[17] Once a number is registered, businesses have thirty-one days to update their records.[18]

14    Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227).

15    *Id.* at § 227(c)(3).

16    47 C.F.R. § 64.1200(c)(2).

17    *Id.* at § 64.1200(c)(2), (e), (f).

18    *Id.* at § 64.1200(c)(2)(i)(D).

Congress through the Telephone Consumer Protection Act provides "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may assert a claim.[19] Congress provides "no person or entity shall initiate any telephone solicitation to ... a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."[20] Mr. Weingrad must plead (1) he received more than one telephone solicitation call within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the Do Not Call Registry.[21]

Case 1:26-cv-00658-JKM    Document 10    Filed 06/26/26    Page 13 of 18

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed. Supp. (2024)
2024 WL 4228149

19    47 U.S.C. § 227(c)(5).

20    47 C.F.R. § 64.1200(c)(2).

21    *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021) (quoting *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020)).

Top Healthcare Options claims he does not and cannot plead these facts. It relies on Judge Azrack's analysis in *Gillam v. Reliance First Cap., LLC.*[22] In *Gillam*, the call recipient alleged he had registered his cell phone number on the nationwide Do Not Call Registry in February 2017.[23] The call recipient alleged the home loan and refinancing plan marketing company called him seventeen times from the same number between January 2021 and August 2021.[24] The call recipient alleged he answered one call in August 2021 and the caller marketed refinancing products to the call recipient.[25] The home loan company moved to dismiss arguing the call recipient failed to sufficiently allege he received more than one telephone solicitation in the twelve-month period.[26] Judge Azrack agreed and found the call recipient did not "plausibly plead receipt of at least one additional telephone solicitation from [defendant] within the requisite 12-month period [wa]s fatal to his Section 227(c)(5) cause of action."[27] Judge Azrack rejected the call recipient's argument she should consider the other calls as "telephone solicitations" because they came from the same telephone number and close in time to the August 2021 call.[28] Judge Azrack dismissed the complaint with prejudice, reasoning the call recipient failed to plausibly state a claim because blocked, missed, or declined calls are not "telephone solicitations" under the Act.[29]

22    No. 21-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023).

23    *Id.* at *1.

24    *Id.*

25    *Id.*

26    *Id.* at *2–3.

27    *Id.* at *3 (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15)).

28    *Id.*

29    *Id.* at *3–4; *see also Greene v. Select Funding, LLC*, No. 20-7333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (emphasis in original) ("[W]hile [plaintiff] alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged *one* telephone solicitation ... [and] has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.").

Not all courts have reached the same conclusion, but on distinguishable facts. In *Whittaker v. Freeway Insurance Services Am., LLC*, Judge Campbell rejected telemarketer's argument the call recipient failed to allege more than one telephone solicitation reasoning "[m]ultiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls." No. 22-8042, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023). But the call recipient before Judge Campbell not only received four calls and a voicemail from the same number; but also affirmatively called the company back and spoke with the company about the calls' purpose. *Id.* at *1. Mr. Weingrad received calls from nine different numbers allegedly associated with Top Healthcare Options. *Cf. Atkinson v. Choice Home Warranty*, No. 22-4464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) (distinguishing *Greene*, 2021 WL 4926495) (call recipient answered three calls from company and received repeated calls from the same number); *Spurlark v. Dimension Serv. Corp.*, No. 21-3803, 2022 WL 2528098, at *1 (S.D. Ohio July 7, 2022) (call recipient received voicemails on ignored calls and ultimately answered an incoming call and spoke with a representative for the company); *Bird v. Pro Star Builders, Inc.*, No. 22-3610, 2022 WL 18216007, at *1 (C.D. Cal. Nov. 28, 2022) (all calls to call recipient, including the call the recipient answered, came from the same telephone number); *Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 790 (E.D. Mich. 2022) (same); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014) (same).

Case 1:26-cv-00658-JKM    Document 10    Filed 06/26/26    Page 14 of 18

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed. Supp. (2024)
2024 WL 4228149

**\*4** Top Healthcare Options placed nine calls to Mr. Weingrad.[30] But Mr. Weingrad only answered one of these calls.[31] Mr. Weingrad does not allege more than one telephone solicitation within a twelve-month period. He does not presently allege Top Healthcare Options violated the Telephone Consumer Protection Act.

[30] ECF 12 ¶¶ 30–31.

[31] *Id.* ¶ 32.

### 2. Mr. Weingrad does not allege the contents of the one call.

Top Healthcare Options argues Mr. Weingrad pleads insufficient information about the single call he answered.[32] Mr. Weingrad argues we can infer the purpose of the call from the name Top Healthcare Options used, the "National Health Enrolment Centre," and the timing of the call falling in "ObamaCare's Open Enrolment period."[33]

[32] ECF 24-1 at 6 n.2.

[33] ECF 30 at 4–5.

A telephone solicitation violates the Telephone Consumer Protection Act if the purpose of the call encourages "the purchase or rental of, or investment in, property, goods, or services."[34] Call recipients must do more than allege the calls in question were telephone solicitations. Returning again to Judge Azrack's *Gillam* analysis, the call recipient "failed to allege sufficient facts regarding the content of the calls from which the Court could infer ... the purpose of the calls" because plaintiff only stated defendant solicited refinancing products.[35] Judge Azrack noted other courts considering similarly deficient pleadings dismiss with leave to amend.[36] Judge Humetewa reached a similar conclusion in *Gulden v. Consolidated World Travel Inc.*[37] The call recipient in *Gulden* alleged the telemarketer placed calls for the purpose of soliciting products and services but did not provide "factual support that would allow the court to draw a reasonable inference that this is true."[38] Judge Humetewa found the pleading to be "nothing more than a conclusion, which *Twombly* specifically prohibits."[39]

[34] 47 C.F.R. § 64.1200(f)(15).

[35] *Gillam*, 2023 WL 2163775, at \*3.

[36] *Id.*

[37] No. 16-01113, 2017 WL 3841491 (D. Ariz. Feb. 15, 2017).

[38] *Id.* at \*3.

[39] *Id.* (citing *Twombly*, 550 U.S. at 555).

We reviewed Judge Vazquez's early 2023 decision in *Atkinson v. Choice Home Warranty* finding the call recipient sufficiently pleaded the call's contents by alleging "Defendant began calling Ms. Atkinson on her cellular telephone to sell Plaintiff a home warranty plan," the calls were made "for telemarketing purposes," and "Defendant placed calls to Ms. Atkinson on numerous occasions attempting to solicit Plaintiff a home warranty plan that Plaintiff had no interest in."[40] But Judge Vazquez reviewed allegations of further conversations which specifically identified the caller and provided Ms. Atkinson with a website to purchase Choice Home Warranty's products.[41] And our colleagues allow allegations with fulsome information about solicitation calls to proceed into discovery.[42]

[40] No. 22-4464, 2023 WL 166168, at \*5 (D.N.J. Jan. 11, 2023).

[41] *Id.* at \*1.

[42] *See, e.g., Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at \*1 (E.D. Pa. July 21, 2021) (plaintiff pleading detailed allegations about the content of telephone solicitation calls).

Mr. Weingrad only pleads "the purpose of the call was to sell the Plaintiff health insurance."[43] He does not plead a statutory violation without "further factual enhancement."[44] He presently falls short of the required level.

[43] ECF 12 ¶ 32.

[44] *Twombly*, 550 U.S. at 557.

### 3. Mr. Weingrad does not allege a "willful" or "knowing" violation.

**\*5** Top Healthcare Options argues Mr. Weingrad does not allege facts allowing us to plausibly infer Top

Case 1:26-cv-00658-JKM    Document 10    Filed 06/26/26    Page 15 of 18

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed. Supp. (2024)
2024 WL 4228149

Healthcare Options willfully violated the Telephone Consumer Protection Act. [45] Mr. Weingrad argues Top Healthcare Options made calls under an illegal fake name, "National Health Enrolment Centre," and used multiple phone numbers to contact Mr. Weingrad because the company knew its actions were illegal. [46]

[45]    ECF 24-1 at 13–14.

[46]    ECF 30 at 13–15.

We may triple the statutory damages if the fact-finder determines Top Healthcare Options "willfully or knowingly violated" the Telephone Consumer Protection Act. [47] Top Healthcare Options must know it performed violative conduct because "[i]f we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful or knowing.' " [48] Mr. Weingrad alleges only "Defendant's violations were negligent, willful or knowing" and Top Healthcare Options called under a false name. [49] This is insufficiently pleaded and Mr. Weingrad, without more, cannot seek trebled damages. [50]

[47]    47 U.S.C. § 227(b)(3)(C).

[48]    *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015).

[49]    ECF 12 ¶¶ 6, 58, 63.

[50]    *See, e.g., Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *4 (W.D. Wash. Oct. 11, 2023) (dismissing trebled damages from a Telephone Consumer Protection Act case for insufficient pleading); *Fania v. Verified Docu Serv., Inc.*, No. 22-2652, 2024 WL 1012963, at *4–5 (M.D. Fla. Mar. 8, 2024) (same).

We dismiss Mr. Weingrad's Telephone Consumer Protection Act claim without prejudice. He does not plead he received multiple telephone solicitations and does not plead the contents of the calls he received. We dismiss Mr. Weingrad's claim for treble damages without prejudice as he does not plead a knowing or willful violation of the law.

**B. Mr. Weingrad does not and cannot state a claim under the Pennsylvania Telemarketer Registration Act.**

Mr. Weingrad sues Top Healthcare Options for engaging in telemarketing in Pennsylvania without registering in the Commonwealth. Top Healthcare Options moves to dismiss this claim arguing there is no private right of action under the Pennsylvania Telemarketer Registration Act. [51] Mr. Weingrad admits the Pennsylvania mandate. But he then suggests the alleged Pennsylvania Telemarketer Registration Act violation can constitute a predicate claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. [52]

[51]    ECF 24-1 at 8–10.

[52]    ECF 30 at 15–20.

The Pennsylvania General Assembly vested the authority to enforce the Pennsylvania Telemarketer Registration Act with Pennsylvania's Attorney General. [53] "[W]here the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals." [54] There is no private cause of action under the Pennsylvania Telephone Registration Act. [55]

[53]    73 PA. CONS. STAT. § 2245.2(k)(1).

[54]    *Shelton v. FCS Cap. LLC*, No. 18-3723, 2019 WL 6726404, at *3 (E.D. Pa. Dec. 11, 2019) (quoting *Lerro ex rel. Lerro v. Upper Darby Twp.*, 798 A.2d 817, 822 (Pa. Commw. Ct. 2002)).

[55]    *Id.* ("[T]he PTRA's language demonstrates the General Assembly's intent to commit enforcement of the PTRA to the Attorney General. Shelton therefore cannot maintain such a claim as a matter of law.").

**\*6** Mr. Weingrad cannot sidestep the General Assembly's policy by presenting his Pennsylvania Telemarketer Registration Act claim as a predicate claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law because "the UTPCPL's private action applies only to a 'person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal' as a result of covered unlawful practices." [56] Mr. Weingrad did not do so. [57]

[56]    *Perrong v. CMI Mktg. Rsch. Inc.*, No. 22-3733, 2023 WL 6277299, at *3 (E.D. Pa. Sept.

26, 2023) (quoting 73 PA. CONS. STAT. § 201-9.2(a)) (holding a violation of the Pennsylvania Telemarketer Registration Act could not serve as a predicate claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law).

57    Mr. Weingrad responds arguing he can show ascertainable loss by highlighting the battery power and data storage space he loses by receiving unwanted phone calls. ECF 30 at 15–20. But Mr. Weingrad ignores the General Assembly's requirement Unfair Trade Practices and Consumer Protection Law claimants must show ascertainable loss tied to "purchase[d] or lease[d] goods or services" as a result of the covered unlawful practice. 73 Pa. Stat. § 201-9.2. Mr. Weingrad does not allege that he purchased his phone, electricity, or phone data from Top Healthcare Options.

We dismiss Mr. Weingrad's Pennsylvania Telemarketer Registration Act claim with prejudice because there is no private right of action under the Act.

### C. Mr. Weingrad cannot seek injunctive relief. [58]

58    Mr. Weingrad argues Top Healthcare Options should have challenged standing under Federal Rule of Civil Procedure 12(b)(1). ECF 30 at 11. But we "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

Mr. Weingrad seeks injunctive relief even though there is no basis to find a call after December 2023 or risk of a call. [59] Top Healthcare Options argues Mr. Weingrad is not entitled to injunctive relief because he has not pleaded threat of future harm. [60] Mr. Weingrad argues he must only plead a statutory violation to establish standing to seek injunctive relief. [61]

59    ECF 12 at 12.

60    ECF 24-1 at 10–13.

61    ECF 30 at 11–13. Mr. Weingrad relies on *Abramson v. AP Gas & Elec. (PA), LLC*, No. 22-1299, 2023 WL 1782728 (W.D. Pa. Feb. 6, 2023). In

*Abramson*, the defendant-caller was sued for using automated voice messages, not for a Do Not Call Registry violation, and defendant had been earlier sued for the same statutory violation. *Id.* at *4–5.

Standing must be shown "for each claim ... and for each form of relief [sought] (for example, injunctive relief and damages)." [62] Mr. Weingrad must plead facts from which we can plausibly find he is "likely to suffer future injury" from Top Healthcare Option's conduct to have standing to seek injunctive relief. [63] He must plead "continuing, present adverse effects" and may not rely solely on "[p]ast exposure to illegal conduct." [64] And "[i]njunctive relief cannot automatically be granted upon a finding of statutory violation." [65]

62    *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted).

63    *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

64    *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

65    *Int'l Union, United Auto. Aerospace & Agr. Implement Workers of Am., AFL-CIO v. Amerace Corp.*, 740 F. Supp. 1072, 1086 (D.N.J. 1990) (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982); *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.*, 906 F.2d 934 (3d Cir. 1990)).

**\*7** Mr. Weingrad does not plead threat of future harm. [66] We dismiss Mr. Weingrad's claim for injunctive relief without prejudice.

66    Our colleagues dismiss injunctive relief remedies for Telephone Consumer Protection Act claims where plaintiffs fail to plead future harm. *See, e.g., Zononi v. CHW Grp., Inc.*, No. 22-14358, 2023 WL 2667941, at *5 (S.D. Fla. Mar. 7, 2023) (dismissing injunctive relief from Telephone Consumer Protection Act claim); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (same).

### III. Conclusion

**Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed. Supp. (2024)**

2024 WL 4228149

We grant Top Healthcare Options's motion. We dismiss the Telephone Consumer Protection Act claim, as well as a claim for injunctive relief, without prejudice to timely amend. Mr. Weingrad may be able to plead facts under federal law but cannot allege a separate claim for injunctive relief. Equitable relief is part of a remedy for a violation. We dismiss the Pennsylvania Telemarketer Registration Act claim with prejudice as there is no private right of action under the Act.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4228149

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2026, a copy of the foregoing was served on all counsel of record in this matter via the Court's ECF system.

*/s/ Christopher A. Reese*
Christopher A. Reese

10